**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | | |
|---|---|---|
| MARSHA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:04-0728-JFA-BM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| EAU CLAIRE COOPERATIVE HEALTH CENTERS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Fifth Judicial Circuit, but was subsequently removed to this Court by a notice of removal filed March 9, 2004. In its notice of removal, Defendant notes that Plaintiff has asserted a claim under a federal statute, the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et. seq..

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 21, 2005. Plaintiff filed a memorandum in opposition on February 2, 2005, in which Plaintiff withdrew her first cause of action under state law and so much of her second cause of action as alleged retaliation under the FMLA. Plaintiff otherwise opposes Defendant's motion for summary judgment as it pertains to her second cause of action alleging interference with her rights under the FMLA. Defendant thereafter filed a reply memorandum on February 10, 2005. This



matter is now before the Court for disposition.[1]

### **Background and Evidence**[2]

The Defendant provides access to primary health care in the Midlands area of South Carolina. Plaintiff was hired on or about August 28, 2000 as a patient check-out clerk in the Defendant's Waverly office in Columbia. Plaintiff also worked as a temporary office manager at that location while the regular office manager was out with back surgery, as well as a supervisor for a short period of time at the Defendant's pediatric center on Monticello Road.

In late summer 2003, Plaintiff was assigned to the Defendant's adult care facility, which was at another location on Monticello Road. Plaintiff initially worked as the temporary office manager for about a month until Sharonda Gordon was hired as the full-time office manager. Plaintiff's Deposition, pp. 44-45. On Monday, October 20, 2003, Plaintiff became ill and telephoned her supervisor (Practice Manager Hank Gaw) to advise that she was going to see a doctor and would not be reporting to work. Plaintiff's Deposition, pp. 80-82. Plaintiff apparently did not personally speak with Gaw, but left a voice mail message for him. Id. After initially seeing her own physician (Dr. Hardin), Plaintiff was referred to Dr. Cynthia Pridgen, who is employed by the Defendant, for an appointment on October 22, 2003. Plaintiff testified that she telephoned Office Manager Gordon to advise her of her appointment with Dr. Pridgen. Plaintiff's Deposition, pp. 45,

---



[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

80-84.

Plaintiff did not request any formal type of leave, including leave under the FMLA. Plaintiff's Deposition, p. 97. On Friday, October 31, 2003, Plaintiff's absences were designated as annual leave, for which she continued to receive her regular pay. Hanna Affidavit, § 6. Dr. Pridgen performed surgery on the Plaintiff in late October 2003, and subsequently provided Plaintiff with a work excuse on November 10, 2003, which indicated Plaintiff could return to work on December 12, 2003. Plaintiff's Deposition, pp. 87-89, and Exhibit 14. However, Defendant received a second medical excuse from the Plaintiff on December 4, 2003, on which Dr. Pridgen indicated that a determination would not be made as to whether Plaintiff could return to work until December 17, 2003. Plaintiff's Deposition, Exhibit 15.

Plaintiff had been absent from work since October 20, 2003 due to her medical condition. Plaintiff testified that she was not required by the Defendant to provide anything in writing about her absence from work, but that she had spoken with various supervisors during this period of time, including when they would call to check on her. Plaintiff's Deposition, pp. 84-85, 97. Following her appointment with Dr. Pridgen on December 17, 2003, she was not released to return to work or given another appointment. Plaintiff testified that it was her understanding that Dr. Pridgen would call her with the results of her x-ray; Plaintiff's Deposition, p. 103; but that when she did not hear from Dr. Pridgen, she decided to return to work on December 22, 2003. Plaintiff's Deposition, p. 128.

When Plaintiff reported to work on December 22, Gordon advised her that she would need a medical release to return to work. Plaintiff's Deposition, p. 118; Exhibit 17. Plaintiff called Dr. Pridgen at the Defendant's Waverly office and spoke with triage nurse Tanya Morant, who



advised Plaintiff that Dr. Pridgen was not there and that she was the only physician who could release Plaintiff to return to work. Plaintiff's Deposition, pp. 107-110. Coincidently, the Defendant's Manager of Human Resources, Al Hanna, along with Human Resources Associate Keosha Jones, arrived at the adult care office while Plaintiff was there. Hanna Affidavit, ¶ 9; Jones Affidavit, ¶ 5; Plaintiff's Deposition, pp. 113-114, & Exhibit 17. Hanna also told Plaintiff that she would need a doctor's release to return to work, and suggested that Plaintiff go to the Waverly Office, where "somebody will release you." Plaintiff's Deposition, pp. 113-115. Hanna attests that any of the physicians working at the Defendant's offices that day could have provided Plaintiff with a release. Hanna Affidavit, ¶¶ 17, 19-20. See also Pridgen Affidavit, ¶ 13[3]; Davis Affidavit, ¶ 11.

Plaintiff testified that she telephoned the Waverly office and spoke with a lab technician named "Tammy". Plaintiff requested that Tammy take Plaintiff's chart to Dr. Davis to obtain a release, and was then advised by Tammy that Dr. Davis said she was not going to release her. Plaintiff's Deposition, pp. 121-124.[4] Plaintiff then went home. Plaintiff testified that she again called the Waverly clinic later that day and spoke with another employee named "Deidre", who advised Plaintiff that she did not need an appointment with Dr. Pridgen but that she did not know when Dr. Pridgen was due to return. Plaintiff testified that she also called the Defendant's administrative office and spoke with Administrative Assistant Liz Hundley, who advised Plaintiff

---

[3] While Dr. Prigden also attests that another doctor could have provided Plaintiff with a release, that doctor would have had to examine the Plaintiff before doing so. Id.

[4] Defendant has provided an affidavit from a Tammy Ogburu-Ogbonnaya, who attests that she did not speak with the Plaintiff that day. Defendant's Reply Memorandum, Exhibit 1. This is a factual dispute which is considered in the light most favorable to the Plaintiff. Defendant's additional argument, that Plaintiff's testimony as to what "Tammy" told her constitutes hearsay, is an issue to be resolved at trial. See Rule 801(d)(2)(A), (C) and (D), Fed.R.Evid.

that Dr. Pridgen was scheduled to return to work on Monday, December 29, 2003. <u>Plaintiff's Deposition</u>, pp. 125-126; <u>see also</u> <u>Hundley Affidavit</u>, ¶¶ 8-9. Hundley attests that she had received a call from Hanna asking her if she could help make sure Plaintiff had no problems getting a work release, and that she [Hundley] followed-up with this request. See <u>Hunley Affidavit</u>, ¶¶ 5-6; <u>see also</u> <u>Kayse Affidavit</u>, ¶¶ 6-8.

Plaintiff testified that she left town on December 23, 2003 to spend the Christmas holidays in Charlotte, and that upon her return there was a message on her answering machine to call Keosha Jones in Human Resources. <u>Plaintiff's Deposition</u>, p. 130-131. <u>See also</u> <u>Jones Affidavit</u>, ¶ 9. Jones attests that she had called the Plaintiff on December 22, 2003 after Plaintiff did not show up at the Waverly clinic, and had left a phone message that date. Jones left another message on Plaintiff's answering machine on December 29, 2003, after Plaintiff did not report to work or get in touch with a supervisor that day. <u>Jones Affidavit</u>, ¶¶ 8-9, 12; <u>Kayse Affidavit</u>, ¶ 15.[5] Plaintiff testified that she did not go out of town until December 23, but does not say anything about any telephone message from Jones prior to her leaving. However, when Plaintiff testified that there was a message from Jones on her answering machine when she returned from Charlotte, she is apparently referring to the earlier message from Jones, not Jones' telephone call of December 29. See <u>Plaintiff's Deposition</u>, pp. 137, 140.

Plaintiff testified that she went to the Defendant's Waverly facility to see Dr. Pridgen at 8:30 a.m. on Monday, December 29, 2003, and was told by Deidre that Dr. Pridgen would not be

---

[5]It is undisputed that Plaintiff did not report to work on either Tuesday, December 23, or Wednesday, December 24, and that the office was closed for the Christmas holidays on Thursday and Friday (the 25th and 26th). Therefore, Monday, December 29, 2003, was the first work day after the Christmas holidays.



5

back in the office until Wednesday, December 31, 2003.  Plaintiff's Deposition, pp. 131, 136.  Plaintiff testified that she then telephoned Hundley to tell her that she would not be able to see Dr. Pridgen until December 31.  Plaintiff's Deposition, pp. 136-137, 140.  Hundley confirms that Plaintiff called her on December 29.  Hundley Affidavit, ¶¶ 8-9.  Plaintiff then did not report to work on Tuesday, December 30, 2003.  Jones attests that she made further efforts to contact Plaintiff, including calling her home, without success.  Jones Affidavit, ¶¶ 13-14; but see Plaintiff's Deposition, p. 137.  Jones then advised Hanna that she had been unable to contact the Plaintiff.  Jones Affidavit, ¶ 15; Hanna Affidavit, ¶ 24.

Plaintiff went to see Dr. Pridgen on December 31, 2003, and following an examination Dr. Pridgen decided to release Plaintiff to return to work on Friday, January 2, 2004.  Plaintiff's Deposition, pp. 139-140, Exhibit 18.  Plaintiff testified that she then called Hundley and told her that she had been released to return to work on Friday.  Plaintiff's Deposition, p. 137.  Hundley confirms that Plaintiff called her on that day and gave her this information.  Hundley Affidavit, ¶ 10.  However, on that same date (December 31, 2003), Hanna contacted Hank Gaw, who was now Chief Operating Officer, and advised him that Plaintiff had been out of work for six (6) days without reporting to her job or notifying her immediate supervisor of the reasons she was unable to report to work.  Hanna Affidavit, ¶¶ 26-27.  Hanna attests that a decision was made at that time to terminate Plaintiff's employment.  Hanna Affidavit, ¶¶ 27-28.  A termination letter was then mailed to the Plaintiff on December 31, 2003.  Plaintiff's Deposition, Exhibit 19.

On Friday, January 2, 2004, Plaintiff reported to work and was advised by co-worker Pamela Johnson that she would have to report to Hanna at the main administrative office.  Plaintiff's Deposition, p. 146; Hanna Affidavit, ¶ 30.  Hanna advised Plaintiff of her termination and that a



6

letter of termination had already been sent to her home.  Plaintiff's Deposition, pp. 144-146, and Exhibit 19; Hanna Affidavit, ¶¶ 33-34.  Plaintiff then left the premises.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

As previously noted, Plaintiff's only remaining claim is her allegation that the Defendant violated her rights under the FMLA when it terminated her employment.  The FMLA provides twelve (12) weeks of unpaid leave per year for eligible employees.  Under the FMLA, an employee is entitled to take reasonable leave for medical and other reasons in a manner that accommodates the legitimate interests of their employer. 29 U.S.C. § 2612.  An "eligible employee" under the Act is an employee who has been employed for at least twelve (12) months by the employer with respect to whom leave is requested, and for at least one thousand two hundred and fifty (1,250) hours of service with such employer during the previous twelve (12) month period.  29 U.S.C. § 2611(2)(A).  Defendant does not dispute that Plaintiff meets this standard.  However, Defendant argues that no violation of the FMLA occurred when Plaintiff was terminated from her employment, because Plaintiff was physically able and ready to return to work on Monday, December 22, 2003, and failed to do so.  Defendant argues that because Plaintiff was



7

absent without cause after December 22, it was not a violation of the FMLA to terminate her.

An employee is entitled to FMLA leave if the employee has a "serious health condition…mak[ing her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). For purposes of summary judgment, Defendant has not disputed the issue of whether Plaintiff had a serious medical condition through Monday, December 22, 2003. Rather, Defendant argues that when Plaintiff appeared for work on December 22 she was physically able to do her job, and that she in fact worked in her position until she was asked to go get a medical release. Hanna Affidavit, ¶ 13. Defendant contends that it was therefore justified in terminating Plaintiff's employment when she failed to return to work on or after that date, citing the cases of Mayland v. St. Joseph Medical Ctr., 2001 WL 708815 (D.Md. 2001), and Barron v. Runyon, 2000 WL 227913 (4th Cir. 2000), as support for its argument. In St. Joseph Medical Ctr., the Court granted summary judgment for the Defendant employer after finding that the employee was not entitled to further leave when nothing in the record showed that the employee had a serious health condition and there was no evidence presented that a doctor thought the employee could not return to work. In Barron, the Court found following a bench trial that the employer rightfully terminated an employee for absences when the employee failed to substantiate a medical need for the extended time he had taken off.

However, the facts presented to the Court in this case do not match those of St. Joseph Medical Ctr. or Barron. Here, the employee (the Plaintiff) was trying to *return* to work, not take additional time off. The only reason that Plaintiff did not continue to work on and after December 22, 2003 was because the *Defendant* told her she had to leave until she could provide a medical release allowing her to return to work. While the Defendant was certainly within its

8



rights to require a medical release as long as proper notices were given to the Plaintiff[6], Plaintiff's testimony was that she was not able to obtain this release until December 31, 2003, which release provided that she could return to work on January 2, 2004. Plaintiff then returned to work on that date.

Defendant argues that Plaintiff could have obtained a release to come back to work on December 22, 2003; however, Plaintiff testified that she did everything she could to obtain a release, but was told that only Dr. Pridgen could provide a release to her. While the Defendant has provided evidence to dispute this claim, considering the evidence in the light most favorable to the Plaintiff, as this Court is required to do at summary judgment, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that a violation of the FMLA occurred when the Defendant terminated Plaintiff's employment. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)[At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor . . . . Credibility

---



[6]The evidence in the record shows that the Defendant complied with the first part of the notice requirement under 29 C.F.R. § 825.310(e) for fitness-for-duty certification by setting forth the requirement in its handbook. However, there is not sufficient evidence to determine as a matter of law that the Defendant complied with the second part of the notice requirement, that "[s]pecific notice shall also be given to any employee from whom fitness-for-duty certification will be required either at the time notice of the need for leave is given or immediately after leave commences and the employer is advised of the medical circumstances requiring leave, unless the employee's condition changes from one that did not previously require certification pursuant to the employer's practice or policy." 29 C.F.R. § 825.310(e); see Porch v. Dillard's Inc., No. 02-170, 2004 WL 1809813 (N.D.Tex. Aug. 12, 2004). Further, even if the trier of fact concludes that the Defendant did provide the required notice, a violation still may have occurred since Plaintiff returned with the required release on the day set forth in the release and prior to the expiration of her maximum twelve weeks of leave under the FMLA. 29 C.F.R. § 825.310(e); see also § 825.213(a)(3).

9

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," are all functions for the trier of fact]; Muhhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D. Pa. 1999). Therefore, the Defendant is not entitled to summary judgment on this claim.

## Conclusion

Based on the foregoing, it is recommended that Plaintiff's FMLA retaliation claim, as well as Plaintiff's state law claim set forth in her first cause of action, be **dismissed**. However, it is further recommended that the Defendant's motion for summary judgment with respect to Plaintiff's FMLA termination claim be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 16, 2005